IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>HALO HOMECARE SERVICES, LLC, an Ohio corporation; HALO MGT PRODUCTIONS LLC, an Ohio corporation; SHARON WARD, an individual; and SHANA NORRIS, an individual,<br><br>　　　　　Defendants. | Civil Action File No.<br><br>20-cv- |

COMPLAINT

Plaintiff, Eugene Scalia, Secretary of Labor, United States Department of Labor, brings this action against Defendants Halo Homecare Services, LLC ("HHCS"), an Ohio Corporation; Halo MGT Productions LLC ("HMGT") , an Ohio Corporation; Sharon Ward ("Ward"), an individual; and Shana Norris ("Norris"), an individual, (collectively, "Defendants") pursuant to Section 16(c) of the Fair Labor Standards Act of 1938, as Amended (29 U.S.C. § 201 et seq.) ("the FLSA") to recover unpaid minimum wage and overtime compensation owing to Defendants' employees, together with an equal additional amount as liquidated damages; and pursuant to Section 17 of the FLSA to enjoin and restrain Defendants from violating the provisions of Sections 6, 7, 11, and 15 of the FLSA.

PRELIMINARY STATEMENT

As alleged more fully below, Defendants repeatedly and willfully violated, and continue to violate, the FLSA in operating their home health care agencies. Defendants engaged in a variety of practices to evade their minimum wage, overtime, and recordkeeping obligations under the FLSA. They failed to pay employees a premium for overtime hours worked, illegally misclassified

1

employees as independent contractors, illegally paid employees as independent contractors for hours transporting clients, improperly deducted "unverified hours" from paychecks, improperly claimed administrative exemptions for some office workers, and improperly withheld final paychecks from some employees who left their employ. For the reasons below the Secretary seeks to recover back wages and liquidated damages for employees, and to enjoin Defendants from violating the FLSA in the future.

## I. JURISDICTION AND VENUE

a. Jurisdiction is conferred upon the Court by Sections 16(c) and 17 of the FLSA 29 U.S.C. §§ 216(c) and 217, and 28 U.S.C. § 1345.

b. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 as HHCS and HMGT each had a primary place of business in this Judicial District and Ward and Norris reside in this Judicial District.

## II. DEFENDANTS

a. Defendant HMGT is an Ohio corporation incorporated in 2010 and, at all times hereinafter mentioned, has engaged in business: as a consulting firm; and from at least November 17, 2016 to approximately May 5, 2020 as a home health care agency.

    i. At all times hereinafter mentioned, HMGT had a primary place of business at 8044 Montgomery Rd. Suite 700, Cincinnati, OH, 45236, in Hamilton County within this court's jurisdiction. HMGT utilized this address when operating as a consulting firm.

    ii. At all times hereinafter mentioned, HMGT was owned entirely by Renee Marzett ("Marzett").

iii. From at least November 17, 2016 to approximately May 5, 2020, HMGT had a place of business at 800 Compton Rd., Suite 27, Cincinnati, Ohio 45231, in Hamilton County within this court's jurisdiction. During this time period, HMGT utilized this address when operating as a home health care agency.

iv. From at least November 17, 2016 to approximately May 5, 2020, HMGT operated its home health care agency business under the following business names:

    a. Halo Home Health Care

    b. Halo Home Health Care Services

    c. Halo Home Health Care, LLC

    d. Halo Home Health Care Agency, LLC

v. None of the four (4) business names listed above in subparagraph (iv) are or have been registered with the Ohio Secretary of State as corporations, LLCs, or any other type of business.

vi. On January 26, 2015, HMGT registered Halo Home Health Care Services as a trade name with the Ohio Secretary of State. This trade name registration expired on January 26, 2020.

vii. HMGT did not register Halo Home Health Care, Halo Home Health Care, LLC, or Halo Home Health Care Agency, LLC as a trade name with the Ohio Secretary of State.

viii. From at least November 17, 2016 to approximately May 5, 2020, HMGT operated its home health care agency business utilizing insurance billing codes, a Medicaid license, Ohio Department of Developmental Disabilities ("DODD") Homemaker Personal Care ("HPC") and HPC Transportation licenses, a bank account, and a Federal Employer Identification Number ("FEIN") registered in HMGT's name.

3

ix. From at least November 17, 2016 to approximately May 5, 2020, HMGT was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

b. Defendant HHCS is an Ohio corporation incorporated in 2018 and engaged in business as a home health care agency.

    i. At all times hereinafter mentioned, HHCS had a primary place of business at 800 Compton Rd., Suite 27, Cincinnati, Ohio 45231, in Hamilton County within this court's jurisdiction.

    ii. Since approximately May 5, 2020, HHCS has operated its home health care agency business under the following business names:

        a. Halo Home Health Care

        b. Halo Home Health Care Services

        c. Halo Home Health Care, LLC

        d. Halo Home Health Care Agency, LLC

    iii. None of the four (4) business names listed above in subparagraph (ii) are or have been registered with the Ohio Secretary of State as corporations, LLCs, or any other type of business.

    iv. HHCS did not register Halo Home Health Care, Halo Home Health Care, LLC, or Halo Home Health Care Agency, LLC as a trade name with the Ohio Secretary of State.

    v. Since approximately May 5, 2020, HHCS has operated its home health care agency business utilizing DODD HPC and HPC Transportation licenses registered in HMGT's name.

    vi. Since approximately May 5, 2020, HHCS operated its home health care agency business utilizing insurance billing codes, a Medicaid license, and a FEIN registered in HHCS' name.

    vii. Since approximately May 5, 2020, HHCS has been and is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

c. Defendant HHCS is a successor-in-interest of Defendant HMGT in that there was a substantial continuity of business operations between Defendant HHCS and Defendant HMGT:

    i. Both HHCS and HMGT conducted business under the business names Halo Home Health Care, Halo Home Health Care Services, Halo Home Health Care, LLC, and Halo Home Health Care Agency, LLC.

    ii. On or about May 5, 2020, HHCS transferred HMGT's insurance billing code and Medicaid license to itself.

    iii. HHCS uses the same office used by HMGT when HMGT was operating its home health care agency business.

    iv. HHCS uses the same website, email, and logo used by HMGT when HMGT was operating its home health care agency business.

    v. HHCS took over nearly all of HMGT's ongoing client sites and nearly all of HMGT's clients.

    vi. Nearly all the workers treated as employees and independent contractors by HMGT continued to be treated the same by HHCS.

    vii. HHCS uses the same supervisory personnel used by HMGT when HMGT was operating its home health care agency business, including but not limited to individual Defendants Ward and Norris.

      viii.      The same jobs exist under substantially the same working conditions with no change in employee pay or hours from HMGT to HHCS.

      ix.      HHCS uses the same machinery, equipment, and methods of production used by HMGT when HMGT was operating its home health care agency business.

      x.      HHCS produces the same product produced by HMGT when HMGT was operating its home health care agency business, namely home health care.

      xi.      HHCS has notice of the instant allegations and charges against HMGT.

d. Defendant Ward, an individual, is also known as Sharon Marzett, Sharon Ward-Marzett, Sharon Douglas, and Sharon Ward-Douglas. On information and belief, Ward resides at 4235 N. Shore Dr., West Chester, Ohio, 45069, in Butler County within this Court's jurisdiction. Since at least November 17, 2016, Ward has been and is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d). Ward has reported being the owner of HMGT and HHCS' business names. Ward applied for and received a Paycheck Protection Program loan in the name of HMGT. Ward is the owner and registered agent of HHCS. Ward actively supervised the day-to-day operations and management of HMGT and HHCS in relation to their employees, including but not limited to establishing HMGT's and HHCS' compensation methods and determining which workers HMGT and HHCS classified as employees and which as independent contractors. Ward acted directly or indirectly in the interest of HMGT and HHCS in relation to their employees.

e. On information and belief, Defendant Norris aka Shana Merritt, an individual, resides at 453 Dewdrop Cir., Apt. D, Cincinnati, Ohio 45240, in Hamilton County within this Court's jurisdiction. Since at least November 17, 2016, Norris is and has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d). Norris actively supervised the day-to-day operations and management of HMGT and HHCS in relation to their employees,

including but not limited to interviewing and hiring employees, setting compensation rates, conducting new hire training, assigning shifts, and being the primary point of contact for employees. Norris acted directly or indirectly in the interest of HMGT and HHCS in relation to their employees.

## III. COVERAGE

a. From at least November 17, 2016 to approximately May 5, 2020, Defendant HMGT was engaged in related activities performed through unified operation or common control for a common business purpose and constituted an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 213(r).

b. From at least November 17, 2016 to approximately May 5, 2020, Defendant HMGT employed persons in domestic service in households, and thus affecting commerce. 29 U.S.C. § 202(a). From at least November 17, 2016 to approximately May 5, 2020, employees of Defendant HMGT annually earned in excess of $2,100 from this Defendant. 29 C.F.R. § 552.2(b). From at least November 17, 2016 to approximately May 5, 2020, employees of Defendant HMGT worked more than eight (8) hours in a workweek. 29 C.F.R. § 552.2(b).

c. From at least November 17, 2016 to approximately May 5, 2020, Defendant HMGT was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that said enterprise had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise had an annual gross volume of sales made or business done of not less than $500,000.

d. Since approximately May 5, 2020, Defendant HHCS has been and is engaged in related activities performed through unified operation or common control for a common business purpose and constitute an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 213(r).

e. Since approximately May 5, 2020, Defendant HHCS has been and is employing persons in domestic service in households, and thus affecting commerce. 29 U.S.C. § 202(a). Since approximately May 5, 2020, employees of Defendant HHCS annually earned in excess of $2,100 from this Defendant. 29 C.F.R. § 552.2(b). Since approximately May 5, 2020, employees of Defendant HHCS has been and are working more than eight (8) hours in a workweek. 29 C.F.R. § 552.2(b).

f. Since approximately May 5, 2020, Defendant HHCS has been and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that said enterprise has had and has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has an annual gross volume of sales made or business done of not less than $500,000.

## IV. MISCLASSIFICATION

a. Defendants misclassified some workers as independent contractors. The work performed by workers classified as employees and those misclassified as independent contractors is virtually the same.

   i. Defendants set workers' schedules and tracked hours worked using a GPS-enabled smartphone application.

      ii. Defendants billed Medicaid and private insurance for the work done, set pay rates, and maintained employment records.

      iii. For workers not caring for family members, Defendants selected the workers' clients.

      iv. Defendants' managers monitored and supervised Defendants' "staff."

      v. Workers did not negotiate pay with clients or otherwise have any opportunity for profit or loss.

      vi. Workers worked exclusively for Defendants during the course of their employment.

      vii. Home health care does not require specific individual licensing or otherwise require a "unique skill."

      viii. Workers did not invest in any equipment or materials. Defendants, not the individual workers, held a DODD HPC license permitting the workers to care for clients.

      ix. Home health care was an integral part of Defendants' business.

b. Defendants misclassified some workers as independent contractors when transporting clients, despite properly classifying them as employees for all other tasks.

      i. Defendants set the pay rates when workers transported clients and maintained employment records for this task.

      ii. Workers did not negotiate pay with clients or otherwise have any opportunity for profit or loss when transporting clients.

      iii. Transporting clients does not require specific licensing, besides a standard driver's license, or otherwise constitute a "unique skill."

      iv. Defendants provided these workers with two sets of tax forms: 1099 forms for hours worked transporting clients, and W-2 forms for all other tasks. Defendants did not

      withhold appropriate taxes from these workers for hours worked transporting clients, but did so for hours worked on all other tasks.

  v.    Transporting clients was an integral part of Defendants' business. HMGT and HHCS' websites advertises client transportation as a service it provides as part of home health care. Defendants, not the individual workers, held a DODD HPC Transportation license permitting the workers to transport clients.

## V.   MINIMUM WAGE VIOLATIONS

a. Defendants repeatedly and willfully violated the provisions of Sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206, 215(a)(2), by employing some of their employees in commerce or in the production of goods for commerce or employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, at wages at rates less than $7.25 per hour for workweeks since at least November 17, 2016.

b. Specifically, Defendants repeatedly and willfully violated Section 6 of the FLSA when they engaged in the following practices:

  i.    Illegally deducted "unverified hours" from employees' pay; and

  ii.   Failed to pay some employees their final paycheck.

## VI.   OVERTIME VIOLATIONS

a. Defendants repeatedly and willfully violated the provisions of Sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 207, 215(a)(2), by employing employees who were engaged in commerce or in the production of goods for commerce, or who were employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA as aforesaid, for workweeks longer than forty (40) hours, without compensating

said employees for hours worked in excess of forty (40) hours per week at rates not less than one and one-half times the regular rate at which they were employed for workweeks since at least November 17, 2016.

b. Defendants specifically repeatedly and willfully violated Section 7 of the FLSA when they engaged in the following practices:

   i. Only paying employees the rate Medicaid or private insurance coverage reimbursed Defendants, regardless of the number of hours worked by employees;

   ii. Misclassifying some employees as independent contractors denying those workers a premium for hours worked over forty in a work week;

   iii. Illegally paying some employees as independent contractors for hours transporting clients and not paying those employees a premium for hours worked over forty in a work week;

   iv. Misapplying the administrative exemptions to some non-exempt office workers; and

   v. Failing to pay some employees their final paycheck.

## VII. RECORDKEEPING VIOLATIONS

Defendants, employers subject to the provisions of the FLSA, repeatedly and willfully violated the provisions of Sections 11(c) and 15(a)(5) of the FLSA, 29 U.S.C. §§ 211(c), 215(a)(5) in that they failed to make, keep, and preserve adequate and accurate records of their employees and the wages, hours and other conditions and practices of employment maintained by them as prescribed by regulations duly issued pursuant to authority granted in the FLSA and found in 29 C.F.R. Part 516, in that records fail to show adequately and accurately, among other things, the number of hours worked each week. Specifically, Defendants failed to keep records identifying which hours were paid to workers as employees for home health care and which hours were paid

to workers as independent contractors for "transportation," simply providing a total of those hours at the end of each pay period. Additionally, Defendants failed to identify which hours were unpaid as "unverified," simply providing a total of those hours at the end of each pay period.

## VIII. INJUNCTION

Since at least November 17, 2016, Defendants repeatedly and willfully violated the aforesaid provisions of the FLSA. A judgment which enjoins and restrains such violations and includes the restraint of any withholding of payment of unpaid minimum wage and overtime compensation found by the court to be due to present and former employees under the FLSA is expressly authorized by Section 17 of the FLSA, 29 U.S.C. § 217.

WHEREFORE, cause having been shown, Plaintiff prays for judgment against Defendants as follows:

A. For an Order pursuant to Section 17 of the Act, permanently enjoining and restraining Defendants, their officers, agents servants, employees, and those persons in active concert or participation with them from prospectively violating the Act; and

B. For an Order:

1. pursuant to Section 16(c) of the Act, finding Defendants liable for unpaid minimum wage and overtime compensation due Defendants' employees and for liquidated damages equal in amount to the unpaid compensation found due their employees listed in the attached Exhibit 1 (additional back wages and liquidated damages may

12

      be owed to certain employees presently unknown to Plaintiff for the period covered by this complaint); or, in the event liquidated damages are not awarded,

2. pursuant to Section 17, enjoining and restraining Defendants, their officers, agents servants, employees, and those persons in active concert or participation with them, from withholding payment of unpaid minimum wage and overtime compensation found to be due Defendants' employees and pre-judgment interest computed at the underpayment rate established by the Secretary of the Treasury, pursuant to 26 U.S.C. § 6621;

C. For an Order awarding Plaintiff the costs of this action; and

D. For an Order granting such other and further relief as may be necessary and appropriate.

DATE: September 18, 2020

/s/ Adam Lubow

_____
**ADAM LUBOW (0097517)**
Attorney for Plaintiff
U.S. Department of Labor
1240 E. 9th St. Rm. 881
Cleveland, Ohio 44199
(216)522-3876

KATE S. O'SCANNLAIN
Solicitor of Labor

CHRISTINE Z. HERI
Regional Solicitor

MAUREEN CAFFERKEY
Counsel for Wage and Hour