### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| JULIE A. SU, Secretary of Labor, U.S. Department of Labor (successor to Eugene Scalia), | : : : : : | Case No. 1:20-cv-744 |
| | | Judge Matthew W. McFarland |
| Plaintiff, | : : | |
| v. | : : | |
| HALO HOMECARE SERVICES, LLC, *et al.*, | : : : | |
| Defendants. | : | |

---

## ORDER GRANTING PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT

---

This matter is before the Court on Plaintiff's Motions for Default Judgment (Doc. 33-36). Defendants failed to timely respond to the motions. *See* S.D. Ohio Civ. R. 7.2(a)(2). Thus, this matter is ripe for review. For the reasons below, the Court **GRANTS** Plaintiff's Motions for Default Judgment.

### BACKGROUND

Julie A. Su, Secretary of Labor for the U.S. Department of Justice,[1] seeks default judgment against Defendants Halo MGT Productions, LLC ("HMGT"), Halo Homecare

---

[1] This case was originally filed on behalf of Eugene Scalia in his official capacity as Secretary of Labor for the U.S. Department of Labor. Scalia was then replaced by Martin J. Walsh following the filing of this action. Walsh was the Secretary of Labor when the Motions for Default Judgment (Docs. 33-36) were filed. Since such filings, Walsh has been replaced by Julie A. Su. Thus, pursuant to Fed. R. Evid. 201(b)(2), the Court takes judicial notice of the fact that Julie Su is the current Secretary of Labor for the U.S. Department of Labor, as such fact can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, such as the U.S. Department of Labor website.

Services, LLC ("HHCS"), Sharon Ward, and Shana Norris for violations of the Fair Standards Labors Act ("FLSA"), 29 U.S.C. § 201 et. seq., "to recover unpaid minimum wage and overtime compensation ow[ed] to Defendant's employees[.]" (Am. Compl., Doc. 16, Pg. ID 64.) Plaintiff seeks a permanent injunction enjoining Defendants from violating Sections 6, 7, 11 and 15 of the FLSA, as well as monetary damages for unpaid minimum wages, overtime compensation, and liquidated damages owed to Defendants' employees during the period of July 14, 2017 through February 6, 2021, equaling $768,229.48. (*See id.* at Pg. ID 76; *see also* Bogomolov Dec., Doc. 33-2, Pg. ID 164-65.)[2]

Because default has been properly entered against Defendants (*see* Doc. 31), Plaintiff's factual allegations are deemed admitted. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995). From November 17, 2016 through May 5, 2020, HMGT operated as a home health care agency. (Am. Compl., Doc. 16, Pg. ID 65-66.) HMGT operated under the following names: "Halo Home Health Care, Halo Home Health Care Services, Halo Home Health Care, LLC and Halo Home Health Care Agency, LLC." (*Id.* at 66.) Additionally, HMGT registered Halo Health Care Services as a trade name with the Ohio Secretary of State on January 26, 2015, but such registration expired on January 26, 2020. (*Id.*)

Then, on May 5, 2020, HHCS began its operations as a home health care agency, utilizing the same primary place of business and operating under the same names as

_____

[2] Plaintiff filed four Motions for Default Judgment (Docs. 33-36), seeking default judgment against each Defendant individually. However, with each motion, Plaintiff submitted the same Declaration by Nikolai Bogomolov in Support of Motion for Default Judgment as an attachment. (See Docs. 33-2, 34-2, 35-2, 36-2). Because the Declarations are identical, the Court will only cite to the Declaration attached to Doc. 33.

HMGT. (Am. Compl., Doc. 16, Pg. ID 67.) Additionally, HHCS transferred HMGT's insurance billing code and Medicaid license to itself, began using the same website, email and logo used by HMGT when it was in operation, and continued servicing nearly all of HMGT's clientele. (*Id.*) Employees used the same machinery, equipment and methods of production of HMGT's business model. (*Id.*) The employees continued the same job with substantially no difference in working conditions, hours worked, and wages paid as when the employees were under the HMGT umbrella. (*Id.*) Both HMGT and HHCS "engaged in the business of providing care and home health care services to individuals who are physically or mentally ill." (Bogomolov Dec., Doc. 33-2, Pg. ID 161.)

Ward "had reported being the owner of HGMT and HHCS's business names," and is the owner and registered agent for HHCS. (Am. Compl., Doc. 16, Pg. ID 69.) She also applied for and received a Paycheck Protection Program loan on behalf of HMGT. (*Id.*) Specifically, "Ward actively supervised the day-to-day operations and management of HMGT and HHCS in relation to their employees, including but not limited to establishing HMGT's and HHCS'[s] compensation methods and determining which workers HMGT and HHCS classified as employees and which as independent contractors." (*Id.*) Lastly, Norris "actively supervised the day-to-day operations and management of HMGT and HHCS in relation to their employees, including but not limited to interviewing and hiring employees, setting compensation rates, conducting new hire training, assigning shifts, and being the primary point of contact for employees." (*Id.* at 70.) Norris act as Chief Operations Manager of HMGT. (Bogomolov Dec., Pg. 33-2, Pg. ID 160.)

Nikolai Bogomolov, the Assistant District Director and former investigator for the

3

U.S. Department of Labor, Wage and Hour Division at the Cincinnati Area Office, investigated into whether Defendants were compliant with the FLSA. (Bogomolov Dec., Doc. 33-2, Pg. ID 159-60.) Such investigation covered the period of July 14, 2017 through February 6, 2021. (*Id.* at 160.) During the course of the investigation, Bogomolov determined that Defendants "failed to pay employees the overtime premium rate . . . for all hours worked over forty in a workweek." (*Id.* at 161-162.) Rather, Defendants "paid employees straight time for all hours worked[.]" (*Id.*) Also, Defendants would, at times, fail to pay employees at all for certain work hours. (*Id.*) Lastly, Defendants "failed to make, keep, and preserve complete records containing employees' total hours worked per week, instead recorded only a record of daily/ semi-monthly hours worked." (*Id.* at 161, 163.) Defendants' records also failed to identify which hours worked were overtime hours. (*Id.*)

After Bogomolov concluded that Defendants were violating the FLSA, Bogomolov used Defendants' payroll records to calculate the overtime wages Defendant allegedly owes "by multiplying each employee's regular rate by one-half to determine the half-time rate owed for overtime worked, and multiplying the resulting half-time rate by the number of hours the employees worked over 40 in each workweek." (Bogomolov Dec., Doc. 33-2, Pg. ID 164.) Then, Bogomolov multiplied "each employee's non-overtime work hours times the Federal minimum wage of $7.25 per hour[,]" resulting in the amount Defendants should have paid its employees under the FLSA. (*Id.*) Bogomolov then subtracted what Defendants actually paid, resulting in an amount owed to 298 employees of a total of $384,149.74. (*Id.*) Bogomolov finally declared that "[t]he total amount of back

4

wages and liquidated damages due to all employees based on Defendants' failure to pay each employee the required premium overtime rates and failure to pay an employee the wages for hours worked from July 14, 2017 through February 6, 2021 is $768,229,48." (*Id.* at 164-65.) Plaintiff additionally attached an Exhibit outlining the amount owed to each of the 298 employees in support of Bogomolov's damages calculation, attached to this Order as Exhibit A. (*See* Bogomolov Dec., Doc. 33-2, Pg. ID 166-73.)

Plaintiff initially filed the original Complaint on September 18, 2020. (Doc. 1.) HHCS, Ward and Norris filed a joint Answer to the original Complaint through counsel (Doc. 13), and HMGT filed a Motion for a More Definite Statement (Doc. 12), which this Court granted and ordered Plaintiff to file an amended complaint. (Doc. 15.) Plaintiff filed an Amended Complaint (Doc. 16), to which Defendants answered (Docs. 17, 18.) However, once discovery began, counsel for each Defendant moved to withdraw. (Docs. 22, 25 & 27.) This Court granted the motions (Docs. 24, 26 & 29) and stayed this matter to allow Defendants to retain new counsel, or, as it relates to Ward and Norris, inform the Court of any intent to proceed pro se. (*See* Doc. 29.) Defendants all failed to timely comply with this Court's Order, so Plaintiff properly applied for an entry of default pursuant to Fed. R. Civ. P. 55 (Doc. 30), which the Clerk entered (Doc. 31). Thereafter, Plaintiff moved for default judgment against each Defendant separately. (*See* Docs. 33-36.)

## LAW

Fed. R. Civ. P. 55 governs entries of default and default judgment. A plaintiff seeking an entry of default against a defendant must first show, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P.

55(a). Upon such showing, the clerk must enter default against the defendant. *Id.* Following such entry, the plaintiff must apply to the court for default judgment, except in cases where the claim "is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b).

Once default is entered against a defendant, that party is deemed to have admitted all of the well-pled allegations in the complaint, except those related to damages. *Atlas Turner, Inc.*, 66 F.3d at 110-11. A court must determine where a complaint states a claim for relief before entering default judgment. *Kuhlman v. McDonnel*, No. 1:20-cv-510, 2022 WL 407240, at *2 (S.D. Ohio Feb. 10, 2022) (citation omitted). "When an application is made to the court under Rule 55(b)(2) for the entry of a judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A Wright & Miller Fed. Prac. & Proc. Civ. § 2685 (3d ed. 2013).

## ANALYSIS

The FLSA sets the minimum wage and overtime standards for most employees in the United States. *See* 29 U.S.C. §§ 206, 207. "Generally, an employee must be compensated at or above the statutory rate for the first forty hours per week of work, and at one and one-half times the employee's regular wage for overtime." *Herman v. Palo Grp. Foster Home, Inc.,* 183 F.3d 468, 471 (6th Cir. 1999). Additionally, the FLSA sets out certain recordkeeping requirements for employers covered by the FLSA. See 29 U.S.C. § 211(c). Failure to comply with the minimum wage standards, overtime standards, or recordkeeping requirements constitutes a violation of the FLSA. 29 U.S.C. § 215(a)(2),

(a)(5).

Plaintiff, on behalf of the Government, brings multiple allegations of FLSA violations against all Defendants. Plaintiff first alleges that Defendants qualify as employers under the FLSA and, therefore, the FLSA extends coverage to Defendants' employees. Second, Plaintiff alleges that Defendants misclassified the employees as independent contractors in an effort to circumvent the FLSA. Third, Plaintiff alleges that Defendants violated Section 6 of the FLSA, 29 U.S.C. § 206, for failing to adhere to minimum wage requirements. Fourth, Plaintiff alleges that Defendants violated Section 7 of the FLSA, 29 U.S.C. § 207, by failing to adhere to overtime compensation requirements. Lastly, Plaintiff alleges that Defendants violated Section 11(c) of the FLSA, 29 U.S.C. § 211(c), for failing to keep adequate records as required. Each allegation is discussed in turn.

## I.     Coverage

The first question the Court must address is if Defendants constitute employers under the FLSA. The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d). An employee is defined as "any individual employed by an employer." 29 U.S.C. § (e)(1). To "employ," as defined by the FLSA, is "to suffer or permit to work." 29 U.S.C. § 203(g). Such definitions are interpreted broadly. *Saylor v. Ohio Bureau of Workers' Comp.*, 83 F.3d 784, 786 (6th Cir. 1996). A broad interpretation of "employer means that, in addition to a corporate or other business entity, owners and officers may be 'employers.'" *Walsh v. Americare Healthcare Servs., Inc.*, No. 2:21-CV-5076, 2023 WL 2544509, at *3 (S.D. Ohio Mar.

16, 2023).

Plaintiff adequately alleged that all Defendants are employers for purposes of the FLSA. Specifically, Plaintiff alleged that, from November 17, 2016 to approximately May 5, 2020, HGMT employed numerous workers, who worked more than eight hours in a workweek, to perform domestic services in households. (Am. Compl., Doc. 16, Pg. ID 70-71.) Such allegation alone establishes HMGT as an "employer."

Additionally, Plaintiff adequately alleged that, HHCS, as a successor-in-interest to HMGT, is an "employer." (Am. Compl., Doc. 16, Pg. ID 69.) The Sixth Circuit has recognized successor liability in the context of the FLSA. *Cobb v. Contract Transp., Inc.,* 452 F.3d 543, 554 (6th Cir. 2006). To determine if successor liability applies, courts must balance "(1) the interests of the defendant-employer, (2) the interests of the plaintiff-employee, and (3) the goal of federal policy, in light of the particular facts of a case and the particular legal obligation at issue." *Id*. When balancing these factors, courts must consider the following:

> (1) whether the successor company has notice of the charge; (2) the ability of the predecessor to provide relief; (3) whether the new employer uses the same plant; (4) whether there has been substantial continuity of business operations; (5) whether the new employer uses the same or substantially same workforce; (6) whether the new employer uses the same or substantially same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether [the defendant] uses the same machinery, equipment and methods of production; and (9) whether [the defendant] produces the same product.

*Id*.

Here, balancing the factors and considerations necessary, the Court finds that HHCS is a successor-in-interest and, therefore, liable for HMGT's alleged FLSA violations

prior to May 5, 2020. First, Plaintiff alleged that HCCS had notice of the instant allegations and charges against HMGT. (Am. Compl., Doc. 16, Pg. ID 69.) Additionally, because HMGT and HHCS are inexplicably intertwined, it is easy to assume that HMGT alone cannot provide the relief necessary to the employees. Lastly, HHCS uses the same office as HMGT, has substantially continued HMGT's business operations, employs substantially the same workforce and supervisory personnel, the same jobs exist under substantially the same working conditions, and HHCS produces the same product as HMGT, home healthcare. (*Id.* at 67-69.) Thus, HHCS is a successor-in-interest of HMGT and, therefore, subject to successor liability.

Lastly, Plaintiff adequately alleged that Ward and Norris are employers. Specifically, Plaintiff alleged that both Ward and Norris supervised day-to-day operations and management of HMGT and HHCS, "including but not limited to establishing . . . compensation methods and determining which workers . . . classified as employees and which as independent contractors." (Am. Compl., Doc. 16, Pg. ID 69-70.) Thus, because a broad interpretation of "employer means that, in addition to a corporate or other business entity, owners and officers may be 'employers[,]'" Plaintiff adequately alleged that Norris and Ward as employers for purposes of the FLSA. *See Walsh v. Americare Healthcare Servs., Inc.*, No. 2:21-CV-5076, 2023 WL 2544509, at *3 (S.D. Ohio Mar. 16, 2023).

Because Defendants are "employers," the question becomes whether Defendants' employees are covered under the FLSA. The FLSA extends coverage to employees under two situations:

9

> (1) the employee himself [is] engaged in commerce or in the production of goods for commerce, *e.g.*, regular and recurrent use of interstate telephone, telegram, mails, or travel ("individual coverage"), 29 U.S.C. 207(a)(1)(1); or (2) the employee [is] employed in an enterprise in commerce or the production of goods in commerce ("enterprise coverage"), 29 U.S.C. § 203(s)(1).

*Americare Healthcare Servs.*, 2023 WL 2544509 at *4. Plaintiff need only establish that Defendants' employees fall into one of the two situations. *Id*. Here, Plaintiff alleges that FLSA coverages extends to Defendants' employees pursuant to 29 U.S.C. § 203(s)(1)(A), or enterprise coverage. Under the FLSA,

> '[e]nterprise engaged in commerce or in the production of goods for commerce' means an enterprise that . . . has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by a person[,] and . . . is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]"

29 U.S.C. § 203(s)(1)(A)(i)-(ii).

"The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Americare Healthcare Servs.*, 2023 WL 2544509 at *4. "Any regular contact with commerce, no matter how small, will result in coverage." *Id*. And the Supreme Court "has consistently construed the [FLSA] liberally to apply to the farthest reaches consistent with congressional discretion, . . . recognizing that broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985). Courts in the Sixth Circuit,

as well as this Court, "have not required plaintiffs to allege the enterprise coverage element of a FLSA claim in detail." *Bey v. WalkerHealthCareIT, LLC*, No. 2:16-cv-1167, 2018 WL 2018104, at *4 (S.D. Ohio May 1, 2018).

Plaintiff adequately alleged enterprise coverage. Section 2(a) states, in pertinent part, "[t]hat Congress further finds that the employment of persons in domestic service in households affects commerce." 29 U.S.C. § 202(a). Domestic service includes services conducted within a client's home such as "companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use." 29 C.F.R. § 552.3. Plaintiff adequately alleged, although lacking in detail, that, as employees of a home health care agency, Defendants' workers were required to perform many of the services outlined in 29 C.F.R. § 552.3, thereby satisfying the first prong of the enterprise coverage test. (Am. Compl., Doc. 16, Pg. ID 67-69.) Additionally, Plaintiff adequately alleged that Defendants' gross annual sales exceeded $500,000. (*Id.* at Pg. ID 71.) Thus, FLSA coverage extends to Defendants' employees.

## II. Misclassification

Because FLSA coverage is established, the Court now turns to whether Defendants misclassified those who worked for Defendants as independent contractors. Courts must apply the "economic reality" test to determine whether a worker is an employee or independent contractor. *Gilbo v. Agment, LLC*, 831 F. Appx. 772, 775 (6th Cir. 2020). Under this test, the Court must balance six factors:

11

> (1) permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; . . . (5) the degree of the alleged employer's right to control the manner in which the work is performed[; . . . and (6)] whether the service rendered is an integral part of the alleged employer's business.

*Id.* (alterations in original). When applying this test, the Court "must consider the FLSA's 'strikingly broad' definition of 'employee[.]'" *Id.* at 775.

### a. Permanency of the Relationship

First, "[g]enerally, independent contractors have variable or impermanent working relationships with the principal company because they often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas 'employees' usually work for only one employer and such relationship is continuous and indefinite in duration." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 (6th Cir. 2015). Court should consider the length and regularity of the working relationship between the parties, as well as whether the workers have "multiple jobs for different companies." *Id.* Here, the workers would work for Defendants exclusively during the course of their employment. (Am. Compl., Doc. 16, Pg. ID 72.) The record suggests that such employment was also at will, rather than a fixed employment period. (*Id.*) Thus, the first factor weighs in favor of finding the workers to be employees under the FLSA.

### b. Degree of Skill Required

Next, "[s]kills are not the monopoly of independent contractors." *Keller*, 781 F.3d at 809 (quotation omitted). Rather, the question "is whether [the workers'] profits

increased because of the 'initiative, judgment, or foresight of the typical independent contractor,' or whether [the] work 'was more like piecework.'" *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). Additionally, courts consider how the workers acquired the skill used. *Id.* Here, Plaintiff adequately alleged that specialized skill was not required to perform the duties of a home healthcare worker. (Am. Compl., Doc. 16, Pg. ID 72-73.) Nothing in the record suggests that the workers' profits increased due to any "initiative, judgment, or foresight" that would suggest the workers be classified as independent contractors. *See Keller*, 781 F.3d at 809. Thus, the second factor weighs in favor of finding the workers to be employees under the FLSA.

### c. Investment in Equipment

Third, the investment in equipment "factor compares the [workers'] total investment in the company to the company's total investment, including office rental space, advertising, software, phone systems, or insurance, and is most significant if it reveals that the worker performs a specialized service the requires a tool or application which he has mastered." *Gilbo*, 831 F. Appx. at 776. Plaintiff alleges that Defendants' "[w]orkers did not invest in any equipment or materials." (Am. Compl., Doc. 16, Pg. Id 72.) Thus, the third factor weighs in favor of finding the workers to be employees under the FLSA.

### d. Opportunities for Profit or Loss

Fourth, the opportunities for profit of loss factor "examines whether workers have opportunities for greater profits based on their management and technical skills." *Gilbo*, 831 F. Appx. at 777. The question is: would the workers be able earn more if they become

more efficient? *Keller*, 781 F.3d at 813. Additionally, the Court considers whether workers are exposed to any risk of loss. *Donovan v. Brandel*, 736 F.2d 1114, 1119 (6th Cir. 1984). Again, nothing in the record suggests that the workers had opportunities to earn more if they were more efficient or that the workers were exposed to loss. Defendants set the pay rates of each employee, set the work schedules, and selected the workers' clients. (Am. Compl., Doc. 16, Pg. ID 72.) Thus, the fourth factor weighs in favor of finding the workers to be employees under the FLSA.

### e. Degree of Control

The fifth factor "focuses on the level of control that the employer has over its workers as well as whether the employer 'retains the right to dictate the manner of the worker's performance.'" *Gilbo*, 831 F. Appx. at 777 (quoting *Keller*, 781 F.3d at 810). Again, nothing suggests that the workers had any level of control over the manner in which the work was performed. Rather, Defendants "set the workers' scheduled and tracked hours worked using a GPS-enabled smartphone application[, and] selected the workers' clients." (Am. Compl., Doc. 16, Pg. ID 72.) Thus, the fifth factor weighs in favor of finding the workers to be employees under the FLSA.

### f. Integral Part of Business

Lastly, the Court considers whether the services rendered by Defendants' workers are an integral part of the alleged employer's business. "The more integral the worker's services are to the business, the more likely it is that the parties have an employer-employee relationship." *Keller*, 781 F.3d at 815. As home health care providers, the workers were integral to Defendants' business. (Am. Compl., Doc. 16, Pg. ID 72.) Thus,

14

the sixth and final factor weighs in favor of finding the workers to be employees under the FLSA.

Therefore, considering all factors above, the Court finds that Defendants' "workers" constitute employees under the FLSA. Defendants misclassified such workers as independent contractors in violation of the FLSA.

### III.    Minimum Wage and Overtime Compensation Violations

Now that it has been determined that Defendants are covered under the FLSA and that Defendants' workers constitute employees rather than independent contractors, the Court turns to Defendants' alleged violations. The FLSA requires covered employers, like Defendants, to pay employees a minimum wage of $7.25 per hour and overtime compensation for hours worked over forty in a workweek at a rate of one and one-half times the employee's regular rate of pay. 29 U.S.C. § 206(a), 207(a)(1). Failure to comply with such requirements constitute FLSA violations. 29 U.S.C. § 215(a)(2).

First, Plaintiff adequately alleged that Defendants willfully violated Sections 6 and 15(a) of the FLSA "by employing some of their employees . . . at wages less than $7.25 per hour for workweeks since November 17, 2016." (Am. Compl., Doc. 16, Pg. ID 73.) "Specifically," Plaintiff alleges that "Defendants repeatedly and willfully violated Section 6 of the FLSA when they . . . [i]llegally deducted 'unverified hours' from employees' pay[,] and [f]ailed to pay some employees their final paycheck." (*Id*.) Today, Plaintiff claims that Defendants "violated [the] FLSA minimum wage standards by failing to pay employees for work performed." (Bogomolov Dec., Doc. 33-2, Pg. ID 163.) Because such allegations are deemed true, Defendants willfully violated Section 6 of the FLSA.

15

Additionally, Plaintiff adequately alleged that Defendants violated Sections 7 and 15(a) of the FLSA by employing employees "for workweeks longer than forty (40) hours, without compensating said employees for hours worked in excess of forty (4) hours per week at rates less than one and one0half times the regular rate[.]" (Am. Compl., Doc. 16, Pg. ID 74.) Specifically, "Defendants repeatedly and willfully violated Section 7 of the FLSA by only paying employees the straight time rate Medicaid or private insurance coverage reimbursed Defendants regardless of the number of hours worked by employees, for hours worked over forty (40) in a workweek." (*Id*.) Defendant misclassified employees as independent contractors and misapplied administrative exemptions to some non-exempt employees in hopes of circumventing Section 7. (*Id*.) Such conduct is enough to violate Section 7 of the FLSA.

Plaintiff is therefore entitled to an entry of default judgment against Defendants on Plaintiff's Minimum Wage Violations and Overtime Compensation Violations claims.

## IV. Recordkeeping Violations

Lastly, Plaintiff alleges that Defendants violated Sections 11(c) of the FLSA by failing to "make, keep, and preserve adequate and accurate records of their employees and the wages, hours and other conditions and practices of employment . . ." (Am. Compl., Doc. 16, Pg. ID 75.) "Specifically, Defendants failed to keep records identifying which hours were paid to workers as employees for home healthcare and which hours were paid to workers as independent contractors for 'transportation[.]" (*Id*. at 11-12.) Rather, Defendants "simply provid[ed] a total of those hours at the end of each pay period." (*Id*. at 12.) "Additionally, Defendants failed to identify which hours were unpaid

16

as 'unverified,' simply providing a total of those hours at the end of each pay period." (*Id.*)

Plaintiff adequately alleged that Defendants violated Section 11(c). The FLSA makes it unlawful for an employer covered by the FLSA to fail to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices employment maintained by him[.]" 29 U.S.C. § 211(c); 29 U.S.C. § 215(a)(5). 29 C.F.R. § 516.2(a) outlines the information that employers covered by the FLSA must maintain and preserve to be in accordance with the statute. Of note, such records must include "the amount and nature of each payment which, pursuant to Section 7(e) of the [FLSA], is excluded from "an employee's regular rate, as well as the "[t]otal additions or deductions from wages paid each pay period . . . [and], in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions . . . ." 29 C.F.R. § 516.2(a)(7), (a)(10).

As the Court previously mentioned, "Defendants failed to keep records identifying which hours were paid to workers as employees for home health care and which hours were paid to workers as independent contractors . . ." (Compl., Doc. 1, Pg. ID 11-12.) Additionally, "Defendants failed to identify which hours were unpaid as 'unverified[]' . . ." (*Id.* at 12.) Thus, Plaintiff adequately alleged that Defendants violated Section 11(c) of the FLSA due to failing to keep adequate records that complied with Section 11(c) and 29 C.F.R. § 516.2(a). Plaintiff is therefore entitled to an entry of default judgment against Defendants on Plaintiff's Recordkeeping Violations claim.

## V.      Injunction

Plaintiff seeks an injunction permanently enjoining Defendants from violating

Sections 6, 7, 11 and 15 of the FLSA. The FLSA allows for injunctions retraining future

violations of the FLSA, 28 U.S.C. § 217, and trial judges have reasonable discretion to

issue permanent injunctions under the FLSA. *Reich v. Petroleum Sales, Inc.*, 30 F.3d 654,

656 (6th Cir. 1994). "Prospective injunctions under the FLSA serve a remedial, not a

punitive purpose." *Id*. This Court, in exercising its discretion whether to grant Plaintiff's

request for a permanent injunction, must consider: " (1) the previous conduct of the

employer; (2) the current conduct of the employer; and (3) the dependability of the

employer's promises for future compliance." *Id*. at 657. The most important consideration

is the likelihood that Defendants will or will not comply with the FLSA in the future. *Id*.

Here, Defendants' conduct has been egregious, violating multiple sections of the

FLSA. Additionally, due to the procedural posture of this case, nothing in the record

"demonstrate[s] a likelihood, much less give assurance," that Defendants will obey the

FLSA in the future. *Reich*, 30 F.3d at 657. Based on Defendants' past conduct and

willingness to not defend this case, there is a serious likelihood that, without a

prospective permanent injunction, Defendants will continue to violate the FLSA in the

future. A permanent injunction is warranted.

## VI.      Monetary Damages

Again, to ascertain a sum of damages under Rule 55(b)(2), an evidentiary hearing

is not required if the Court can determine the amount of damages by computation from

the record before it. *Acosta v. Dreamlife Cmty., LLC*, No. 1:18-cv-492, 2019 WL 632434, at *2

(S.D. Ohio Feb. 14, 2019). The Court may rely on affidavits submitted on the issue of damages. *Id.* Under the FLSA, employers who violate Section 6 and 7 of the FLSA, such as here, are liable to their employees affected in the amount of unpaid minimum wages or unpaid overtime compensation. 29 U.S.C. § 216(b).

Bogomolov's Declaration (Doc. 33-2) establishes that 298 of Defendants' employees were not paid either minimum wage of $7.25 per hour or were not paid time and one-half for all hours worked over 40 in a workweek. Accordingly, Defendants owe 298 employees $384,149.74 in back wages. (*Id.*)

Plaintiff also seeks liquidated damages in the amount of double the back wages awarded. In addition to unpaid minimum wages or unpaid overtime compensation, employees may also be entitled to liquidated damages equal to the amount of unpaid compensation awarded. 29 U.S.C. § 216(b). Liquidated damages under the FLSA "are compensation, not a penalty or punishment" and are generally awarded when back wages have been awarded, such as here. *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002).

However, district courts may choose to not award liquidated damages if the employer shows it acted in good faith and the employer had reasonable grounds for believing the conduct did not violate the FLSA. 29 U.S.C. § 260. Again, Defendants elected to not to defend this matter. Nothing in the record indicates that Defendants acted in good faith, nor that Defendants had reasonable grounds to believe their conduct over multiple years, resulting in a loss to 298 employees of hundreds of thousands of dollars, complied with the FLSA. Thus, Plaintiff is entitled to liquidated damages of $ 384,149.74.

19

The allegations in the Amended Complaint and the evidence set forth by Plaintiff establish that Defendants' employees are entitled to a total of $768,299.48 in back wages and liquidated damages. The amount owed to each of Defendants' former or current employees shall be distributed as indicated in Exhibit A to this Order.

## CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiff's Motions for Default Judgment (Docs. 33-36). The Court, therefore, **ORDERS** the following:

1. Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them be, and they hereby are, **PERMANENTLY ENJOINED AND RESTRAINED** from violating the provisions of §§ 15(a)(2) and 15(a)(5) of the FLSA in any of the following manners:

   a. Defendants **SHALL NOT** pay any of their employees who in any workweek are engaged in commerce or in the production of goods for commerce or who are employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA, wages at a rate less than the applicable minimum wage of $7.25 under the FLSA (or at a rate less than such other applicable minimum rate as may hereafter be established by amendment to the FLSA).

   b. Defendants **SHALL NOT** employ any of their employees engaged in commerce or in the production of goods for commerce or who are employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA, for a workweek

longer than forty (40) hours, unless the employee receives compensation for his/her employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he/she is employed.

 c. Defendants **SHALL NOT** fail to make, keep, and preserve records of their employees, and of the wages, hours, and other conditions and practices of employment maintained by them as prescribed by the regulations of the Administrator of the Secretary of Labor issued, and from time to time amended, pursuant to § 11(c) of the FLSA, and found in Title 29, Chapter V, Code of Federal Regulations, Part 516.

2. The Clerk **SHALL** enter judgment in favor of Plaintiff and against Defendants in the amount of $768,299.48 for unpaid minimum wage and overtime compensation due under the FLSA and liquidated damages in an equal amount, for which execution may issue, to be distributed to Defendants' employees for the time periods and in the amounts indicated in Exhibit A to this Order.

 a. Defendants shall make said payment to Plaintiff for disbursement by Plaintiff as prescribed by law, provided that any money not so distributed by Plaintiff within a reasonable time because of Plaintiff's failure to locate the proper persons or because of any such person's refusal to accept such money shall be covered into the Treasury of the United States as miscellaneous receipts.

3. No costs or disbursements are allowed.

4. This action is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND

## EXHIBIT A

|   | Employee | Back Wages | Liquidated Damages | Total |
|---|---|---|---|---|
| 1 | Adams, Marietta | $9,064.15 | $9,064.15 | $18,128.30 |
| 2 | Adams, Sonora | $1,969.10 | $1,969.10 | $3,938.20 |
| 3 | Ali Bey, Lleira | $55.13 | $55.13 | $110.26 |
| 4 | Allen, JaVonne | $52.06 | $52.06 | $104.12 |
| 5 | Allen, Marcia | $7,709.38 | $7,709.38 | $15,418.76 |
| 6 | Allen, Myeisha | $74.31 | $74.31 | $148.62 |
| 7 | Allen, Shashayla | $230.47 | $230.47 | $460.94 |
| 8 | Allou, Claudette | $916.22 | $916.22 | $1,832.44 |
| 9 | Amison, Sarai | $246.81 | $246.81 | $493.62 |
| 10 | Atkins, Patricia | $228.70 | $228.70 | $457.40 |
| 11 | Barnes, Amber | $247.75 | $247.75 | $495.50 |
| 12 | Barnett, Shani | $58.00 | $58.00 | $116.00 |
| 13 | Bennett, Laquisha | $619.25 | $619.25 | $1,238.50 |
| 14 | Berry, Kevin | $42.06 | $42.06 | $84.12 |
| 15 | Berry, Patricia | $624.90 | $624.90 | $1,249.80 |
| 16 | Blunt, Precious | $87.00 | $87.00 | $174.00 |
| 17 | Boggs, Marisa | $7,789.10 | $7,789.10 | $15,578.20 |
| 18 | Bostic, Cynthia | $161.00 | $161.00 | $322.00 |
| 19 | Brindidge, Kedlly | $548.21 | $548.21 | $1,096.42 |
| 20 | Brown, Jacqueline | $333.50 | $333.50 | $667.00 |
| 21 | Brown, Patrice | $62.00 | $62.00 | $124.00 |
| 22 | Brown, Tiara | $183.75 | $183.75 | $367.50 |
| 23 | Brundidge, Kieonta | $765.74 | $765.74 | $1,531.48 |
| 24 | Brundidge, Kionta | $777.24 | $777.24 | $1,554.48 |
| 25 | Brunson, Brandy | $98.75 | $98.75 | $197.50 |
| 26 | Bryant, Lilly | $257.69 | $257.69 | $515.38 |
| 27 | Bufkin, Larea | $77.19 | $77.19 | $154.38 |
| 28 | Bullock, Diamond | $21.75 | $21.75 | $43.50 |
| 29 | Bush, Vema | $20.00 | $20.00 | $40.00 |
| 30 | Butler, Carteama | $175.81 | $175.81 | $351.62 |
| 31 | Campbell, Kirt | $49.36 | $49.36 | $98.72 |
| 32 | Cartwright, Michelle | $304.50 | $304.50 | $609.00 |
| 33 | Castleberry, Edvonna | $120.00 | $120.00 | $240.00 |
| 34 | Celia, Jacqueline | $1,513.65 | $1,513.65 | $3,027.30 |
| 35 | Claggett, Kimberly | $10,147.08 | $10,147.08 | $20,294.16 |
| 36 | Clark, Brittany | $2,133.00 | $2,133.00 | $4,266.00 |
| 37 | Clark, Deanna | $8,077.70 | $8,077.70 | $16,155.40 |
| 38 | Coach, Tasha | $77.09 | $77.09 | $154.18 |
| 39 | Collins, Elasha | $69.50 | $69.50 | $139.00 |

1

|    | Employee | Back Wages | Liquidated Damages | Total |
|----|----------|-----------|--------------------|-------|
| 40 | Cook, Gina | $2,762.24 | $2,762.24 | $5,524.48 |
| 41 | Cook, Jasmine | $29.00 | $29.00 | $58.00 |
| 42 | Cook, Kristy | $1,040.25 | $1,040.25 | $2,080.50 |
| 43 | Cooper, Whitney | $200.38 | $200.38 | $400.76 |
| 44 | Cottrell, Melita | $113.56 | $113.56 | $227.12 |
| 45 | Crawford, Kevin | $150.00 | $150.00 | $300.00 |
| 46 | Crenshaw, Renaisia | $171.94 | $171.94 | $343.88 |
| 47 | Cromwell, Nikkita | $1,304.23 | $1,304.23 | $2,608.46 |
| 48 | Cunningham, Bettye | $22.00 | $22.00 | $44.00 |
| 49 | Cunningham, Rodney | $177.00 | $177.00 | $354.00 |
| 50 | Custard, Danielle | $72.50 | $72.50 | $145.00 |
| 51 | Damene, Lena | $1,226.50 | $1,226.50 | $2,453.00 |
| 52 | Daugherty, Markeita | $368.54 | $368.54 | $737.08 |
| 53 | Daugherty, Monique | $3,113.13 | $3,113.13 | $6,226.26 |
| 54 | Davis, Frank | $1,047.28 | $1,047.28 | $2,094.56 |
| 55 | Davis, Pamela | $1,147.13 | $1,147.13 | $2,294.26 |
| 56 | Davis, Robert | $92.09 | $92.09 | $184.18 |
| 57 | Davis-Salter, Ruby | $57.60 | $57.60 | $115.20 |
| 58 | Dawson, Omayda | $42.43 | $42.43 | $84.86 |
| 59 | Dedan, Tara | $152.25 | $152.25 | $304.50 |
| 60 | Denson, Malikah | $68.50 | $68.50 | $137.00 |
| 61 | Dickey, Keyasia | $337.87 | $337.87 | $675.74 |
| 62 | Dixon, LeBrent | $47.56 | $47.56 | $95.12 |
| 63 | Donley, Kimberly | $3,673.90 | $3,673.90 | $7,347.80 |
| 64 | Douglas, Chanette | $822.32 | $822.32 | $1,644.64 |
| 65 | Douglas, Erica | $5,245.65 | $5,245.65 | $10,491.30 |
| 66 | Douglas, Tamika | $37.63 | $37.63 | $75.26 |
| 67 | Drain, Annette | $348.70 | $348.70 | $697.40 |
| 68 | Drummond, Georgia | $36.00 | $36.00 | $72.00 |
| 69 | Duffy, Lashandra | $1,124.79 | $1,124.79 | $2,249.58 |
| 70 | Duffy, Latasha | $2,084.31 | $2,084.31 | $4,168.62 |
| 71 | Duncan, Naomi | $2,854.47 | $2,854.47 | $5,708.94 |
| 72 | Embry, Stacey | $1,491.38 | $1,491.38 | $2,982.76 |
| 73 | Engleman, Janette | $644.10 | $644.10 | $1,288.20 |
| 74 | Edubanks, Donna | $1,239.33 | $1,239.33 | $2,478.66 |
| 75 | Evans, Erica | $305.88 | $305.88 | $611.76 |
| 76 | Evans, Karen | $45.00 | $45.00 | $90.00 |
| 77 | Evans, Nimah | $61.12 | $61.12 | $122.24 |
| 78 | Favors, Lisa | $1,394.34 | $1,394.34 | $2,788.68 |
| 79 | Ferguson, Staci | $2,807.70 | $2,807.70 | $5,615.40 |
| 80 | Fields, Christina | $507.50 | $507.50 | $1,015.00 |

|  | Employee | Back Wages | Liquidated Damages | Total |
|---|---|---|---|---|
| 81 | Fields, Tamesha | $231.65 | $231.65 | $463.30 |
| 82 | Fields, Trivia | $70.75 | $70.75 | $141.50 |
| 83 | Fisher, Elizabeth | $74.75 | $74.75 | $149.50 |
| 84 | Fleming, Lashanda | $786.60 | $786.60 | $1,573.20 |
| 85 | Gaines, Anita | $70.38 | $70.38 | $140.76 |
| 86 | Gallegos, Pedro | $55.00 | $55.00 | $110.00 |
| 87 | Garber, Tiffany | $299.95 | $299.95 | $599.90 |
| 88 | Gaston, Lashawnda | $1,012.50 | $1,012.50 | $2,025.00 |
| 89 | Gedorge, Tiye'L | $124.50 | $124.50 | $249.00 |
| 90 | Gilbert, Jamiko | $1,193.75 | $1,193.75 | $2,387.50 |
| 91 | Gill, Michelle | $3,960.13 | $3,960.13 | $7,920.26 |
| 92 | Goines, Brandy | $13,624.21 | $13,624.21 | $27,248.42 |
| 93 | Goines, Carla | $408.25 | $408.25 | $816.50 |
| 94 | Goines, Jesse | $154.88 | $154.88 | $309.76 |
| 95 | Goosby, Shamika | $24.00 | $24.00 | $48.00 |
| 96 | Gordon-Jones, S. | $218.00 | $218.00 | $436.00 |
| 97 | Gore, Brianna | $34.20 | $34.20 | $68.40 |
| 98 | Grant, Angelique | $141.25 | $141.25 | $282.50 |
| 99 | Gray, Regina | $388.80 | $388.80 | $777.60 |
| 100 | Green, Josephine | $10,575.60 | $10,575.60 | $21,151.20 |
| 101 | Green, Kinah | $5,932.88 | $5,932.88 | $11,865.76 |
| 102 | Griggs, Jinay | $76.00 | $76.00 | $152.00 |
| 103 | Hale, Steven | $132.00 | $132.00 | $264.00 |
| 104 | Hall, Senessia | $341.60 | $341.60 | $683.20 |
| 105 | Hambrick, Frances | $7,513.92 | $7,513.92 | $15,027.84 |
| 106 | Hammond, Sherri | $29.15 | $29.15 | $58.30 |
| 107 | Hardin-Owens, Ciara | $2,118.63 | $2,118.63 | $4,237.26 |
| 108 | Hamey, Natika | $41.13 | $41.13 | $82.26 |
| 109 | Hayes, Maquida | $168.88 | $168.88 | $337.76 |
| 110 | Heard, Dena | $3,760.19 | $3,760.19 | $7,520.38 |
| 111 | Higgins, Brittany | $49.00 | $49.00 | $98.00 |
| 112 | Hill, Nikea | $1,132.05 | $1,132.05 | $2,264.10 |
| 113 | Hill, Unika | $59.50 | $59.50 | $119.00 |
| 114 | Hillman, Emily | $6,655.22 | $6,655.22 | $13,310.44 |
| 115 | Hills, Micheko | $630.00 | $630.00 | $1,260.00 |
| 116 | Hogan, Tieara | $283.00 | $283.00 | $566.00 |
| 117 | Houston, Kristine | $39.88 | $39.88 | $79.76 |
| 118 | Hudson, Dondre | $401.38 | $401.38 | $802.76 |
| 119 | Huertas, Lucila | $13,824.64 | $13,824.64 | $27,649.28 |
| 120 | Hunn, Quincy | $327.75 | $327.75 | $655.50 |
| 121 | Ill, Callery | $211.14 | $211.14 | $422.28 |

|     | **Employee** | **Back Wages** | **Liquidated Damages** | **Total** |
|-----|--------------|----------------|------------------------|-----------|
| 122 | Ikehire, Britney | $121.49 | $121.49 | $242.98 |
| 123 | Ingram, Michelle | $515.00 | $515.00 | $1,030.00 |
| 124 | Jackson, Robyn | $11,926.50 | $11,926.50 | $23,853.00 |
| 125 | James, Lariece | $32.50 | $32.50 | $65.00 |
| 126 | Jenkins, Anthony | $337.40 | $337.40 | $674.80 |
| 127 | Jenkins, Jabez | $37.50 | $37.50 | $75.00 |
| 128 | Jenkins, Joann | $300.75 | $300.75 | $601.50 |
| 129 | Jeter, Lynette | $4,831.61 | $4,831.61 | $9,663.22 |
| 130 | Johnson, Alana | $38.50 | $38.50 | $77.00 |
| 131 | Johnson, Candace | $14,390.18 | $14,390.18 | $28,780.36 |
| 132 | Johnson, Edrsler | $380.92 | $380.92 | $761.84 |
| 133 | Johnson, Ersler L | $548.78 | $548.78 | $1,097.56 |
| 134 | Johnson, Glynis | $33.23 | $33.23 | $66.46 |
| 135 | Jones, Alexandria | $98.00 | $98.00 | $196.00 |
| 136 | Jones, Crystal | $244.88 | $244.88 | $489.76 |
| 137 | Jones, Elizabeth | $439.00 | $439.00 | $878.00 |
| 138 | Jones, Erica | $139.75 | $139.75 | $279.50 |
| 139 | Jones, Lisa | $66.00 | $66.00 | $132.00 |
| 140 | Jones, Samantha | $86.63 | $86.63 | $173.26 |
| 141 | Jones, Sharon | $1,505.53 | $1,505.53 | $3,011.06 |
| 142 | Jones, Wilma | $24.63 | $24.63 | $49.26 |
| 143 | Kelley, Shantina | $48.00 | $48.00 | $96.00 |
| 144 | Kemp, Errin | $252.04 | $252.04 | $504.08 |
| 145 | Kennedy-Gray, Rheataunia | $475.53 | $475.53 | $951.06 |
| 146 | Kirkland, Shawnell | $22.52 | $22.52 | $45.04 |
| 147 | Kittles, Tiera | $178.75 | $178.75 | $357.50 |
| 148 | Kramer, Alexis | $329.25 | $329.25 | $658.50 |
| 149 | Kyekye, Mercy | $52.50 | $52.50 | $105.00 |
| 150 | Lambert, Dustin | $390.50 | $390.50 | $781.00 |
| 151 | Laned, Dawnielle | $99.75 | $99.75 | $199.50 |
| 152 | Lawrence, Carla | $789.00 | $789.00 | $1,578.00 |
| 153 | Lee, Betty | $32.00 | $32.00 | $64.00 |
| 154 | Lee Ke'Asia | $990.00 | $990.00 | $1,980.00 |
| 155 | Lee, Tierra | $577.65 | $577.65 | $1,155.30 |
| 156 | Lockett, Tanisha | $2,269.08 | $2,269.08 | $4,538.16 |
| 157 | Long, Fenitra | $68.15 | $68.15 | $136.30 |
| 158 | Natasha, Long | $21.75 | $21.75 | $43.50 |
| 159 | Lovett, Shannon | $134.75 | $134.75 | $269.50 |
| 160 | Luke, Journee | $26.68 | $26.68 | $53.36 |
| 161 | Lyons, Rosalind | $1,889.76 | $1,889.76 | $3,779.52 |

4

|     | Employee | Back Wages | Liquidated Damages | Total |
|-----|----------|------------|--------------------|-------|
| 162 | Mack, Acquinette | $25.38 | $25.38 | $50.76 |
| 163 | Martin, Terra | $44.00 | $44.00 | $88.00 |
| 164 | Mason, Brittany | $205.69 | $205.69 | $411.38 |
| 165 | Matthws, Deasia | $893.81 | $893.81 | $1,787.62 |
| 166 | Mathis, Richard | $152.25 | $152.25 | $304.50 |
| 167 | Mayfield, Edward | $130.00 | $130.00 | $260.00 |
| 168 | Mays, Kingdon | $2,135.74 | $2,135.74 | $4,271.48 |
| 169 | Mays, Latoya | $575.98 | $575.98 | $1,151.96 |
| 170 | McCoy, Lashonda | $349.13 | $349.13 | $698.26 |
| 171 | McGrady, Gwen | $504.13 | $504.13 | $1,008.26 |
| 172 | Merritt, Deshayla | $201.50 | $201.50 | $403.00 |
| 173 | Messer, Shania | $104.50 | $104.50 | $209.00 |
| 174 | Messer, Stephanie | $1,120.61 | $1,120.61 | $2,241.22 |
| 175 | Metzner, Robert | $1,203.75 | $1,203.75 | $2,407.50 |
| 176 | Meyers, Shannon | $287.00 | $287.00 | $574.00 |
| 177 | Mink, Jessica | $94.25 | $94.25 | $188.50 |
| 178 | Minnich, Cheryl | $7,422.21 | $7,422.21 | $14,844.42 |
| 179 | Mitchell, Abu Mahdi | $91.88 | $91.88 | $183.76 |
| 180 | Mock, Valerie | $2,045.71 | $2,045.71 | $4,091.42 |
| 181 | Moore, Jacqueline | $26.25 | $26.25 | $52.50 |
| 182 | Moore, Robin | $909.41 | $909.41 | $1,818.82 |
| 183 | Morris, Kyla | $281.20 | $281.20 | $562.40 |
| 184 | Myers, Carla | $2,306.33 | $2,306.33 | $4,612.66 |
| 185 | Nared, Chrisina | $615.30 | $615.30 | $1,230.60 |
| 186 | Neal, Jamal | $55.00 | $55.00 | $110.00 |
| 187 | Neesham, John | $5,020.86 | $5,020.86 | $10,041.72 |
| 188 | Nelson, Amber | $302.43 | $302.43 | $604.86 |
| 189 | Nuby, Alexis | $66.00 | $66.00 | $132.00 |
| 190 | O'Hara, Chamese | $159.43 | $159.43 | $318.86 |
| 191 | Owens, Andretta | $2,956.74 | $2,956.74 | $5,913.48 |
| 192 | Owens, Tyler | $11,481.75 | $11,481.75 | $22,963.50 |
| 193 | Palmer, Rednicka | $63.50 | $63.50 | $127.00 |
| 194 | Parish, Elizabeth | $1,011.66 | $1,011.66 | $2,023.32 |
| 195 | Parish, Elizabeth | $322.50 | $322.50 | $645.00 |
| 196 | Parker, Faith | $4,153.09 | $4,153.09 | $8,306.18 |
| 197 | Parks, India | $52.50 | $52.50 | $105.00 |
| 198 | Parsons, Mary | $656.89 | $656.89 | $1,313.78 |
| 199 | Pilcher, Jessica | $151.50 | $151.50 | $303.00 |
| 200 | Pitts, Donna | $210.57 | $210.57 | $421.14 |
| 201 | Pollard, Stevie | $64.98 | $64.98 | $129.96 |
| 202 | Price, Sasha | $42.50 | $42.50 | $85.00 |

5

|  | **Employee** | **Back Wages** | **Liquidated Damages** | **Total** |
|---|---|---|---|---|
| 203 | Purvy, Jacqueline | $72.00 | $72.00 | $144.00 |
| 204 | Raike, Bobbi | $354.49 | $354.49 | $708.98 |
| 205 | Ray, Yvette | $185.18 | $185.18 | $370.36 |
| 206 | Rice, Kiesha | $2,998.41 | $2,998.41 | $5,996.82 |
| 207 | Richardson, Tro | $174.70 | $174.70 | $349.40 |
| 208 | Ridley, Tameka | $132.00 | $132.00 | $264.00 |
| 209 | Riegler, Amy | $514.50 | $514.50 | $1,029.00 |
| 210 | Roberts, Da'Ja | $70.44 | $70.44 | $140.88 |
| 211 | Roberts, Mikeal | $28.00 | $28.00 | $56.00 |
| 212 | Roberts, Wiley | $1,735.12 | $1,735.12 | $3,470.24 |
| 213 | Robinson, Ceaira | $67.56 | $67.56 | $135.12 |
| 214 | Robinson, Marlon | $489.71 | $489.71 | $979.42 |
| 215 | Robinson, Salena | $107.25 | $107.25 | $214.50 |
| 216 | Rosemond, Sandra | $24,406.90 | $24,406.90 | $48,813.80 |
| 217 | Rowe, Tonja | $150.50 | $150.50 | $301.00 |
| 218 | Runyon, Brittany | $2,931.60 | $2,931.60 | $5,863.20 |
| 219 | Sakin, Muhammad | $1,046.59 | $1,046.59 | $2,093.18 |
| 220 | Sartor, Lakia | $212.16 | $212.16 | $424.32 |
| 221 | Saunders, Shaunise | $25.13 | $25.13 | $50.26 |
| 222 | Scales, Keisha | $1,054.56 | $1,054.56 | $2,109.12 |
| 223 | Schiller, John | $88.00 | $88.00 | $176.00 |
| 224 | Schulte, Allyson | $145.00 | $145.00 | $290.00 |
| 225 | Seifu, Zenbech | $2,265.50 | $2,265.50 | $4,531.00 |
| 226 | Sherrer, Imani | $69.52 | $69.52 | $139.04 |
| 227 | Shoulders, Shanda | $587.13 | $587.13 | $1,174.26 |
| 228 | Shuler, Pennie | $2,939.71 | $2,939.71 | $5,879.42 |
| 229 | Simms, Brenda | $2,912.62 | $2,912.62 | $5,825.24 |
| 230 | Simpson, Ashlee | $107.06 | $107.06 | $214.12 |
| 231 | Simpson, Mister | $340.00 | $340.00 | $680.00 |
| 232 | Simpson, Sheila | $106.00 | $106.00 | $212.00 |
| 233 | Sims, Tracey | $43.31 | $43.31 | $86.62 |
| 234 | Slaugher-Rumse… | $43.50 | $43.50 | $87.00 |
| 235 | Smith, Anthony | $199.50 | $199.50 | $399.00 |
| 236 | Smith, Brandon | $987.69 | $987.69 | $1,975.38 |
| 237 | Smith, Deazia | $544.50 | $544.50 | $1,089.00 |
| 238 | Smith, Lela | $209.00 | $209.00 | $418.00 |
| 239 | Smith, Regina | $198.00 | $198.00 | $396.00 |
| 240 | Smith, Sandra | $44.00 | $44.00 | $88.00 |
| 241 | Snow, Yvonne | $118.75 | $118.75 | $237.50 |
| 242 | Stallings, Jacqueline | $8,994.70 | $8,994.70 | $17,989.40 |
| 243 | Stallworth, Ronnie | $524.41 | $524.41 | $1,048.82 |

|     | Employee | Back Wages | Liquidated Damages | Total |
|-----|----------|-----------|--------------------|-------|
| 244 | Starr, Lekala | $120.87 | $120.87 | $241.74 |
| 245 | Steier, Sarah | $42.00 | $42.00 | $84.00 |
| 246 | Stevens, Tiffany | $128.38 | $128.38 | $256.76 |
| 247 | Stokes, Rodnice | $945.75 | $945.75 | $1,891.50 |
| 248 | Sykes, Dameka | $340.73 | $340.73 | $681.46 |
| 249 | Thomas, Aletha | $14,301.12 | $14,301.12 | $28,602.24 |
| 250 | Thomas, Brendan | $3,330.25 | $3,330.25 | $6,660.50 |
| 251 | Thomas, Denised | $273.00 | $273.00 | $546.00 |
| 252 | Thomas, Fantazia | $2,255.02 | $2,255.02 | $4,510.04 |
| 253 | Thomas, Niasha | $753.00 | $753.00 | $1,506.00 |
| 254 | Thomas, Robin | $181.63 | $181.63 | $363.26 |
| 255 | Thomas, Simone | $423.30 | $423.30 | $846.60 |
| 256 | Thompson, Jasmine | $319.00 | $319.00 | $638.00 |
| 257 | Thompson, Makedya | $367.94 | $367.94 | $735.88 |
| 258 | Thurman, Shannon | $20.30 | $20.30 | $40.60 |
| 259 | Tigner, Cheryl | $1,323.09 | $1,323.09 | $2,646.18 |
| 260 | Tocker, Lucia | $84.00 | $84.00 | $168.00 |
| 261 | Toler, Quashawn | $452.04 | $452.04 | $904.08 |
| 262 | Tompkins, Tyisha | $1,908.38 | $1,908.38 | $3,816.76 |
| 263 | Triblett, Daryll | $920.67 | $920.67 | $1,841.34 |
| 264 | Trosper, Krissy | $3,138.38 | $3,138.38 | $6,276.76 |
| 265 | Trotter, Psyche | $392.63 | $392.63 | $785.26 |
| 266 | Tye, Ji Karia | $93.60 | $93.60 | $187.20 |
| 267 | Upshaw, Shamala | $87.00 | $87.00 | $174.00 |
| 268 | Walker, April | $22.75 | $22.75 | $45.50 |
| 269 | Walker, Jenea | $369.98 | $369.98 | $739.96 |
| 270 | Wallace, Jennifer | $101.25 | $101.25 | $202.50 |
| 271 | Wallace, Robin | $1,225.18 | $1,225.18 | $2,450.36 |
| 272 | Wallaced, Tagena | $74.90 | $74.90 | $149.80 |
| 273 | Ward, Deane | $44.25 | $44.25 | $88.50 |
| 274 | Ward, Dorenna | $389.50 | $389.50 | $779.00 |
| 275 | Washington, Tiffany | $7,321.86 | $7,321.86 | $14,643.72 |
| 276 | Watkins, LaSheena | $9,712.67 | $9,712.67 | $19,425.34 |
| 277 | Weary, Carla | $176.78 | $176.78 | $353.56 |
| 278 | Webb, Julia | $118.31 | $118.31 | $236.62 |
| 279 | Webster, Kamisha | $49.45 | $49.45 | $98.90 |
| 280 | Westbrooks, Dem | $333.75 | $333.75 | $667.50 |
| 281 | Whatley, Angelica | $136.95 | $136.95 | $273.90 |
| 282 | White, Sharon | $615.00 | $615.00 | $1,230.00 |
| 283 | Whitterson, Kelisha | $578.56 | $578.56 | $1,157.12 |
| 284 | Wilder, Patricia | $84.63 | $84.63 | $169.26 |

|  | Employee | Back Wages | Liquidated Damages | Total |
|---|---|---|---|---|
| 285 | Wiley, Kishawna | $129.63 | $129.63 | $259.26 |
| 286 | Williams, Alicia | $1,158.00 | $1,158.00 | $2,316.00 |
| 287 | Williams, Dawnyel | $1,273.12 | $1,273.12 | $2,546.24 |
| 288 | Williams, Jaquana | $24.00 | $24.00 | $48.00 |
| 289 | Williams, Kenyata | $94.25 | $94.25 | $188.50 |
| 290 | Williams, Nathaniel | $3,258.32 | $3,258.32 | $6,516.64 |
| 291 | Williams, Taenna | $45.65 | $45.65 | $91.30 |
| 292 | Williams, Tyra | $176.00 | $176.00 | $352.00 |
| 293 | Wilson, Anna | $232.00 | $232.00 | $464.00 |
| 294 | Wilson, Barbara | $80.15 | $80.15 | $160.30 |
| 295 | Wilson, Brittany | $181.75 | $181.75 | $363.50 |
| 296 | Woods, Breanna | $352.35 | $352.35 | $704.70 |
| 297 | Wyrick, Teresa | $395.68 | $395.68 | $791.36 |
| 298 | Yisrael, Yahelsha | $87.85 | $87.85 | $175.70 |
|  | **Total** | **$384,149.74** | **$384,149.74** | **$768,299.48** |